UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LELAND J. HEBERT,<br><br>                      Plaintiff,<br><br>v.<br><br>ALLIED RUBBER & GASKET COMPANY,<br><br>                      Defendant. | Case No.: 20-cv-1350-JO-MDD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

      Plaintiff Leland J. Hebert ("Plaintiff") brought an action against his former business partner and employer, Defendant Allied Rubber & Gasket Company ("Defendant"), alleging patent infringement, false marking, and unfair competition surrounding Defendant's sale of adjustable wrenches. Plaintiff and Defendant filed cross-motions for summary judgment on the patent infringement claim. Dkts. 44, 45. Defendant also filed a motion for summary judgment on Plaintiff's false marking and unfair competition claims. Dkt. 45. The Court held oral argument on April 27, 2022. For the reasons discussed below, Plaintiff's motion [Dkt. 44] is DENIED and Defendant's motion [Dkt. 45] is GRANTED.

## I. BACKGROUND

### A. Factual Background

This action arises from a failed business partnership between Plaintiff and Defendant. Plaintiff invented a wrench that adjusts to varying widths for use on fire sprinklers of different sizes. He obtained United States Patent No. 8,850,931 (the "'931 patent"), which covers a universal offset wrench with a width-adjustable head for fire sprinkler systems. Dkt. 31, Ex. 1 ("'931 Pat."). Prior to partnering with Defendant, Plaintiff sold his adjustable wrenches on his own website.

Plaintiff and Defendant, a company that sells plumbing and fire sprinkler equipment, initially entered into a partnership that permitted Defendant to exclusively distribute Plaintiff's wrenches. In July 2015, Defendant's CEO and President, James Stoddard ("Mr. Stoddard"), began negotiating an agreement with Plaintiff to purchase Plaintiff's adjustable wrench—ultimately known as the "Recessed Wrench"—for resale. Dkt. 47 ("Plaintiff's Opp."), Ex. A. In a contract executed on April 13, 2016, the parties agreed that Defendant would purchase unspecified "Patented Products" (presumably, the Recessed Wrench) from Plaintiff for exclusive distribution. *Id.*, Ex. B. Pursuant to the contract, Defendant paid $25 per wrench to Plaintiff. *Id.* In return, Plaintiff applied Defendant's logo to the wrenches. *Id.* He also directed the customers on his website to click a link to Defendant's website to purchase the wrenches directly from Defendant. *Id.*

A few months later, in July of 2016, Plaintiff and Defendant switched to a different manufacturer for the Recessed Wrench. On Defendant's recommendation, Plaintiff began working with manufacturer Wang Cong ("Mr. Wang") to produce the Recessed Wrenches that he would sell to Defendant. Dkt. 45-4 (Declaration of James Stoddard, "Stoddard Decl.") ¶ 13. With the consent of Defendant, *see id.* ¶¶ 15–16, Plaintiff instructed Mr. Wang to place the '931 patent number on these wrenches. Dkt. 45-5 (Declaration of Wang Cong, "Wang Decl.") ¶ 8. Plaintiff eventually transitioned from being Defendant's business partner to working as a direct employee of Defendant. In December 2016, Defendant hired Plaintiff as an employee. Stoddard Decl. ¶ 18. As an employee, Plaintiff

was responsible for working with Mr. Wang to manufacture the Recessed Wrench. *Id.* Defendant thereafter purchased the Recessed Wrench directly from Mr. Wang's manufacturing facility. *Id.* During Plaintiff's employment, Defendant also manufactured three other models of an adjustable wrench: the Offset Wrench, the Concealer Wrench, and the Socket Wrench. *Id.* ¶¶ 3, 9, 10. Defendant did not mark or sell these models for various reasons. For example, Plaintiff worked with Mr. Wang to manufacture and mark the Offset Wrench with Plaintiff's patent number, but the wrench was ultimately defective and never sold by Defendant. *Id.* ¶ 22. The Concealer Wrench was also never sold because it existed only as a prototype. *Id.* ¶ 10. The Socket Wrench, which is a version of the Recessed Wrench without a handle, was never marked with the patent number. *Id.* ¶ 9; Dkt. 45-1 at 25 fn.5.

Ultimately, disputes between Plaintiff and Defendant began to arise. In November 2018, Defendant terminated Plaintiff's employment. Stoddard Decl. ¶ 20. After Plaintiff's termination, Defendant did not order additional Recessed Wrenches from Mr. Wang, but it did maintain and sell a small existing inventory which had already been marked with Plaintiff's patent number during their business relationship. *Id.* In January 2019, Mr. Stoddard sent an email to Plaintiff's representative discussing Plaintiff's patent and their prior business arrangement. Plaintiff's Opp., Ex. D. Mr. Stoddard described his frustration with Plaintiff's work, stating that Plaintiff's original design required modifications to "really work" such that Plaintiff was not the sole inventor of any of these products. *Id.* In May 2020, Mr. Stoddard sent an email to another individual representing Plaintiff regarding a potential settlement offer. *Id.*, Ex. E.

**B. Procedural History**

Plaintiff filed his initial complaint on July 16, 2020, alleging that Defendant willfully infringed his '931 patent by selling the Offset Wrench after Plaintiff was terminated. Dkt. 1. On April 29, 2021, Plaintiff filed an Amended Complaint alleging that the Recessed Wrench, Socket Wrench, and Concealer Wrench, in addition to the Offset Wrench (collectively, the "Accused Wrenches"), also infringed the '931 patent. Dkt. 31 (FAC).

Plaintiff's Amended Complaint included additional causes of action for false marking under 35 U.S.C. § 292 and unfair competition under California Business and Professions Code § 17200. *Id.* These three causes of action are now the subject of the parties' motions for summary judgment.

*1. '931 Patent Claim Language*

With regard to patent infringement, the parties focus their motions for summary judgment on whether Defendant sold wrenches containing the features protected by claims 1, 8, and 2 of Plaintiff's '931 patent. Claims 1 and 8 are the independent claims of the '931 patent, which means that these claims each contain all the features of the invention. Claim 2 is a dependent claim of claim 1, which means that it describes additional features of an aspect of claim 1.

First, claim 1 of the '931 patent describes the protected invention as an "offset wrench with adjustable head" comprising, in relevant part, "a smooth collar comprising a smooth interior wall affixed to said shank opposite said fixed jaw; a threaded collar comprising a threaded interior wall affixed to said base member opposite said jaw member," and "an adjustment mechanism mechanically connected between said smooth collar and said threaded collar for adjusting a distance between said fixed jaw and said adjustable jaw." '931 Pat. at 7:5–49.

Second, claim 8 similarly describes the protected invention as an "offset wrench with adjustable head," comprising, in relevant part, "a smooth collar comprising a tubular member having smooth interior wall affixed to a back surface of said shank opposite said fixed jaw; and a threaded collar comprising a tubular member having threaded interior wall affixed to a back surface said base member opposite said jaw member," and "an adjustment mechanism mechanically connected to said smooth collar and said threaded collar for adjusting a distance between said fixed jaw and said adjustable jaw." *Id.* at 8:7–28.

Finally, claim 2 of the '931 patent further describes the "adjustment mechanism" feature of claim 1 as follows: "The device of claim 1, wherein said adjustment mechanism comprises: an actuator wheel; a smooth shaft extending from a first side of said wheel and

insertably attached within said smooth collar; and, a threaded shaft extending from an opposing second side of said wheel and threadingly mated with said threaded collar." *Id.* at 7:42.

   *2. Claim Construction Hearing*[1]

The Court held a claim construction hearing on June 15, 2021. The parties disputed four terms and phrases from claims 1, 2, 8, and 9: (1) "collar," (2) "threaded," (3) "adjustment mechanism mechanically connected between said smooth collar and said threaded collar for adjusting a distance between said fixed jaw and said adjustable jaw," and (4) "shaft." Dkt. 41 ("Claim Construction Order"). The parties initially disputed the term "interior wall," but stipulated during the hearing that the term should be construed as "inner surface." *Id.*

After the hearing, the Court issued an order construing the disputed terms and phrases. The Court construed the terms "collar" and "shaft" according to their plain and ordinary meaning. Claim Construction Order at 3–4. The Court construed the term "threaded" as "having a thread, which is a helical-shaped groove or ridge." *Id.* The Court construed the phrase "adjustment mechanism mechanically connected between said smooth collar and said threaded collar for adjusting a distance between said fixed jaw and said adjustable jaw" as a means-plus-function term subject to 35 U.S.C. 112(f). *Id.* at 4. Hence, the Court construed the function to be "adjusting a distance between said fixed jaw and said adjustable jaw," and the structure to be "an actuator wheel, a smooth shaft extending from a first side of the wheel and attached to the smooth collar, and a threaded shaft extending from an opposing second side of the wheel and attached to the threaded collar." *Id.* at 6.

---

[1] Judge Dana M. Sabraw held the claim construction hearing and issued a claim construction order prior to the transfer of this case to the undersigned.

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule 56 if the moving party demonstrates the absence of a genuine issue of material fact and the entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it can affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.* A party seeking summary judgment carries the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of its case on which it bears the burden of proving at trial. *Id.* at 322–23. The moving party may also satisfy its initial burden by demonstrating that the opposing party lacks sufficient evidence from which a jury could find an essential element of the opposing party's claim. *Id.* at 325; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F. 3d. 1099, 1102 (9th Cir. 2000).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot merely rest on his pleadings, but must direct the court to specific, triable facts by "*citing to particular parts* of materials in the record." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added); *see Anderson*, 477 U.S. at 250. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When an accused infringer seeks summary judgment of non-infringement, "nothing more is required than the filing of a motion stating that the patentee has no evidence of

infringement and pointing to the specific ways in which the accused [products do] not meet the claim limitations." *Exigent Tech., Inc. v. Atrana Sols., Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006). A patentee claiming infringement "must present proof that the accused product meets each and every claim limitation." *Forest Labs., Inc. v. Abbot Labs.*, 239 F.3d 1305, 1310 (Fed. Cir. 2001). Unsupported or conclusory statements of experts are insufficient to raise a genuine issue of material fact precluding summary judgment. *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002).

## III. DISCUSSION

### A. Patent Infringement

With regard to the patent infringement claim, Plaintiff moves for summary judgment of infringement on the grounds that the Recessed Wrench meets all the limitations of claim 2. Defendant cross-moves for summary judgment of non-infringement on the grounds that the Accused Wrenches do not meet all the limitations of claims 1 and 8. The Court examines the infringement claim below.

Although Plaintiff's patent infringement argument centers on whether the Recessed Wrench meets all the limitations of dependent claim 2, the Court must first examine independent claims 1 and 8 to determine patent infringement. An accused product cannot infringe a dependent claim—a subset of an independent claim—unless the product infringes that related independent claim. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991). Here, claims 1 and 8 are the independent claims of the '931 patent. Each of the remaining claims, including claim 2, is dependent upon either claims 1 or 8. Accordingly, to determine patent infringement, the Court examines whether the Accused Wrenches meet all the limitations of independent claims 1 and 8, which includes the dependent claims such as claim 2.

*1. The Accused Wrenches do not infringe claims 1 or 8 of the '931 patent.*

The Court now turns to the merits of the patent infringement claim. Because the Court has, in its Claim Construction order, already construed the meaning of the claims that make up the patent, the Court now examines whether the Accused Wrenches contain

all the limitations—that is, all the features protected by the patent—of at least one independent claim in the '931 patent. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1356 (Fed. Cir. 2012) (every limitation of a claim must be found in the accused product to establish literal infringement). If the Accused Wrenches lack even one limitation or protected feature of a claim, a plaintiff cannot establish literal infringement of the patent. *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994) (requiring that "each limitation of the claim must be met by the accused device exactly" and "any deviation from the claim preclud[es] a finding of infringement"). Thus, the Accused Wrenches cannot infringe the '931 patent "if any claim element or limitation is missing entirely from the accused product." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991).

As further explained below, the Court concludes Plaintiff has failed to establish that the Accused Wrenches meet all the limitations of claims 1 or 8 as required for a finding of infringement—in other words, Plaintiff fails to provide sufficient evidence that the Accused Wrenches contain each of the described elements of claims 1 or 8. Specifically, the Court concludes that the Accused Wrenches do not meet the limitation of (a) a "threaded collar comprising a threaded interior wall" or (b) a "a smooth shaft extending from a first side of the [actuator] wheel and attached to the smooth collar, and a threaded shaft extending from an opposing second side of the wheel and attached to the threaded collar."

*Claim Limitation: "Threaded collar comprising a threaded interior wall"*

Based on the claim limitations of the '931 patent and the Court's construction of these limitations, the Accused Wrenches must contain a "collar" that has a "helical-shaped groove" in order for the Court to find infringement. As described above, claim 1 requires a "threaded collar comprising a threaded interior wall affixed to said base member opposite said jaw member." '931 Pat. at 7:33–36. Claim 8 similarly requires "a threaded collar comprising a tubular member having threaded interior wall affixed to a back surface said base member opposite said jaw member." *Id.* at 8:21–22. The Court has construed the

threaded collar limitation in these claims as requiring "a helical-shaped groove or ridge" on its "interior wall"—that is, its inner surface. *See* Claim Construction Order at 3–4.

Here, Plaintiff fails to submit evidence that the Accused Wrenches contained a "threaded collar" with a "helical-shaped groove or ridge" on its inner surface. Plaintiff points to a photograph of a metal L-shaped component as the purported threaded collar of the Offset Wrench, but an examination of that object shows a solid cylinder that has eight parallel ridges on its exterior edge, rather than on an interior surface. Dkt. 45 (Declaration of Paul Stewart, "Stewart Decl."), Ex. 16. Similarly, Plaintiff points to a photograph of an angled metal component as the "threaded collar" of the Recessed Wrench and the Socket Wrench. *Id.*, Ex. 17. However, an examination of that component similarly shows a narrow solid cylinder with six parallel ridges on its exterior surface. Dkt. 44-2 (Declaration of Leland Hebert, "Hebert Decl."), Ex. E. While Plaintiff argues that the parallel ridges constitute the "threaded" portion of the collar, Dkt. 44-1 at 7–8, the Court disagrees. The ridges on the Offset Wrench, the Recessed Wrench, and the Socket Wrench are neither helical nor on an interior surface, as required by the claims as construed by the Court. Because Plaintiff's purported collar is a solid object, it does not have an inner surface. Instead, the ridges are parallel and on the exterior surface of the metal cylinder.

With regard to the Concealer Wrench[2], Plaintiff separately argues that the "threaded collar" is a circular hole through a metal jaw piece that allows the adjustment mechanism to connect. Stewart Decl., Ex. 8 (Plaintiff's Expert Report) ¶ 25, Ex. 12. However, Plaintiff has submitted no evidence on the nature of this hole or whether its inner surface contains helical ridges or grooves. *See Anderson*, 477 U.S. at 250 (the opposing party "must set forth specific facts showing that there is a genuine issue for trial"). Accordingly, the Court concludes that Plaintiff has failed to raise a triable issue as to whether the Accused Wrenches meet this limitation of claims 1 and 8.

---

[2] The Concealer Wrench exists only as a prototype and was never brought to market. Stoddard Decl. ¶ 10.

> *Claim Limitation: "a smooth shaft extending from a first side of the [actuator] wheel and attached to the smooth collar, and a threaded shaft extending from an opposing second side of the wheel and attached to the threaded collar"*

Furthermore, the Accused Wrenches must also contain an actuator wheel with a smooth bar extending from one side of the wheel and a bar with helical-shaped grooves extending from the opposite side in order for the Court to find infringement. As described above, claims 1 and 8 require an "adjustment mechanism" that is "an actuator wheel, a smooth shaft extending from a first side of the wheel and attached to the smooth collar, and a threaded shaft extending from an opposing second side of the wheel and attached to the threaded collar." Claim Construction Order at 6. The Court has construed the "shaft" limitation in these claims to have its plain and ordinary meaning. *Id.*

The Court first examines the plain and ordinary meaning of the term "shaft," and then turns to whether the Accused Wrenches contain an actuator wheel with a smooth shaft extending from one side and a threaded shaft extending from the opposite side. The ordinary meaning of a claim may be determined by reviewing "the claims themselves, the specification, the prosecution history, dictionaries, and any other relevant evidence." *Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1002–03 (Fed. Cir. 2016). Ultimately, the "only meaning that matters in claim construction is the meaning in the context of the patent." *Id.* (citing *Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016)). An inventor may not change the meaning of his words to fit the particular circumstances of a trial. *Chicago Steel Foundry Co. v. Burnside Steel Foundry Co.*, 132 F.2d 812, 814–15 (7th Cir. 1943). Here, Plaintiff's patent claim describes a smooth shaft "*extending* from a first side of said wheel and insertably attached within said smooth collar" and a threaded shaft "*extending* from an opposing second side of said wheel and threadingly mated with said threaded collar." '931 Pat. at 7:42–51 (emphasis added). Additionally, both parties agreed that the meaning of a "shaft" as a "long cylindrical bar or pole" is consistent with how Plaintiff intended to use the word "shaft" in his patent. Dkt. 33-1, Ex. C at 66:7–16; Dkt. 45-1 at 19. The claim language and relevant evidence—particularly, the patentee's intention of "shaft" to mean

a "long cylindrical bar or pole" in the context of the patent—indicate that a shaft is an object such as a bar or pole.

Having determined that a shaft is a bar or pole, the Court now examines whether the Accused Wrenches contain an actuator wheel with a smooth bar or pole extending from one side, and a threaded bar or pole extending from the opposite side. Here, Plaintiff fails to submit evidence of an actuator wheel component that has a threaded bar or pole extending from one side, and a smooth bar or pole extending from the opposite side. Plaintiff points to a photograph of an actuator wheel component of the Concealer Wrench, but an examination of that component shows a bar with helical grooves extending from *both* sides. Hebert Decl., Ex. F. The actuator wheel component does not contain a smooth shaft extending from one of the sides as required by the claim limitations. *Id.* Plaintiff argues that the smooth shaft of the Concealer Wrench is the two parallel bars on the handle of the wrench. The Court rejects this argument because an examination of the two parallel bars on the handle of the wrench shows that they do not interact with the actuator wheel as required by the claim limitations.

With regard to the Recessed Wrench, the Offset Wrench, and the Socket Wrench, Plaintiff points to a photograph of an actuator wheel with a hole through the middle that does not have a bar or pole extending from either side. Hebert Decl., Ex. F. Plaintiff argues that the smooth shaft is the hole at the center of the actuator wheel. Plaintiff's Expert Report, Ex. 7. The Court rejects this argument because a "shaft" is not construed to be a hole. *See* Claim Construction Order at 6; *TechSearch, L.L.C.*, 286 F.3d at 1372. The Court therefore concludes that the Accused Wrenches do not have a smooth shaft extending from one side of the actuator wheel and a threaded shaft extending from the opposite side. Accordingly, the Court finds that Plaintiff fails to raise a triable issue as to whether the Accused Wrenches meet this limitation of claims 1 and 8.

//

//

*2. Patent marking does not per se warrant or preclude summary judgment on this record.*

The Court next addresses Plaintiff's argument that the patent marking on the Recessed Wrench *per se* warrants summary judgment of infringement in his favor. Evidence of marking can function as an extrajudicial admission by the marking party "that the marked product falls within the scope of the patent claims." *Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303, 1310 (Fed. Cir. 2013). Like with other admissions, however, a defendant may "introduce counter evidence or explanation" that rebuts such relevant evidence supporting infringement. *Id.* In *Frolow*, the court found that the plaintiff's evidence of patent marking precluded summary judgment of non-infringement because such evidence, in combination with the defendant's expert evidence that the accused product did not infringe, created a triable issue of material fact. 710 F.3d at 1310–11. The court emphasized, however, that patent marking does not defeat summary judgment in every instance and the outcome depends on the facts in the record. *Id.* at 1310; *cf. Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp., Inc.*, 123 F.3d 1445, 1454 (Fed. Cir. 1997) (granting summary judgment of non-infringement where defendant's expert explained that his "admissions" of infringement on the record were due to a misunderstanding).

Here, the history of the relationship between Plaintiff and Defendant explains how Defendant's Recessed Wrenches came to be marked with Plaintiff's patent number. Initially, per their exclusive distribution agreement, Plaintiff manufactured the wrenches and Defendant distributed them, paying Plaintiff $25 per wrench in return for exclusive sale rights. Plaintiff's Opp, Ex. B. During this period, Defendant had no role in manufacturing the wrenches or placing Plaintiff's patent number on these wrenches. Stoddard Decl. ¶ 13. Then, when Plaintiff and Defendant agreed to change the manufacturer of the wrenches, Plaintiff instructed the new manufacturer to mark the wrenches with the '931 patent number. *Id.* ¶¶ 16–17, Ex. 7. Defendant permitted this arrangement, which continued even after Plaintiff started working for Defendant as an

employee. *Id.* ¶¶ 18–19. Defendant agreed to the marking of these wrenches based on the assumption that Plaintiff's patent governed the Recessed Wrench. Plaintiff's Opp., Ex. A. However, after Plaintiff and Defendant terminated their working relationship, Defendant expressed doubt over whether Plaintiff's patent even covered the Recessed Wrench. *Id.*, Ex. D.

The above evidence indicates that Defendant's agreement to the marking was born out of its business relationship with Plaintiff rather than a reasoned conclusion of patent coverage. Defendant simply assumed that Plaintiff's patent covered the wrenches he was manufacturing, and then later discovered it did not. In the context of their business relationship, the fact that Defendant acquiesced to Plaintiff marking the wrenches based on an untested assumption does not create a triable issue of fact that infringement occurred. *Neonatal Product Group, Inc. v. Shields*, 312 F. Supp. 3d 1010, 1023 (D. Kan. 2018) (finding patent marking on accused product was not an admission defeating summary judgment of non-infringement where defendant company merely "assumed" the patent covered the product but later realized it did not). Given the clear evidence that the Accused Wrenches do not meet the claim limitations, the Court concludes that such an "admission" does not create an issue of fact any more than an expert's unsupported conclusion on infringement would. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) (holding that an expert's unsupported and conclusory assertions are insufficient to raise a genuine issue of material fact).

**B. False Marking**

The Court now turns to Plaintiff's false marking claim, in which he alleges that Defendant injured him by selling Recessed Wrenches[3] that were marked with Plaintiff's

---

[3] After Plaintiff was terminated, the only Recessed Wrenches sold by Defendant were the remaining inventory that had been previously marked with Plaintiff's patent number while he was still employed by Defendant. Stoddard Decl. ¶ 20. The Concealer Wrenches and the Offset Wrenches were never sold. *Id.* ¶¶ 10, 22.

patent number without his consent. Defendant argues, and the Court agrees, that summary judgment should be granted in favor of Defendant because Plaintiff fails to raise a triable issue as to whether he suffered competitive injury from the sales of the Recessed Wrenches.

While the law prohibits false marking of devices, only a plaintiff who has suffered a competitive injury from the false marking may bring suit. The false marking statute prohibits a party from marking a product with a patent number without the consent of the patentee. 35 U.S.C. § 292(a). Only a person "who has suffered a competitive injury as a result of a violation of this section" may bring an action to enforce Section 292(a). 35 U.S.C. § 292(b); *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1373 (Fed. Cir. 2013) (plaintiff must prove that it "suffered a competitive injury as a result of the false marking" to have statutory standing for false marking claim). Competitive injury is a "wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition [or] a disadvantage in a plaintiff's ability to compete with a defendant." *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (Fed. Cir. 2015). In the false-marking context, the injury must be one inflicted on a party's competitive activity and *caused* by the false marking. *Id.* at 1402; *Gravelle v. Kaba Ilco Corp.*, 684 Fed. Appx. 974, 979 (Fed. Cir. 2017) (affirming summary judgment for defendant on false marking claim due to "lack of concrete, non-speculative evidence of causation of an actual injury").

Here, Plaintiff fails to submit evidence that he suffered competitive injury caused by the patent marking on Defendant's wrenches. Plaintiff does not point to any evidence that he suffered a loss of sales, reputation, or the ability to compete as a result of the Recessed Wrenches that were marked with the '931 patent number. To the contrary, Plaintiff did not sell the Recessed Wrench as a competitor upon entering into an initial exclusive distribution agreement with Defendant. Plaintiff's Opp., Ex. B. Moreover, the record shows that Plaintiff did not sell or attempt to sell his own Recessed Wrench as a competitor after being hired, and subsequently fired, by Defendant. Nor has Plaintiff submitted any evidence in the record that Defendant failed to pay him royalties. By entering into an exclusive distribution agreement, Plaintiff and Defendant agreed to not act as competitors;

any financial injury he suffered working with Defendant under that agreement would be damages for breach of contract rather than "competitive" injury that he suffered as a result of Defendant's failure to pay "royalties on the falsely marked sales." Stewart Decl., Ex. 13 at 60. Therefore, Plaintiff neither suffered a loss of sales nor a competitive disadvantage to another company as a result of the patent marking. *Sukumar*, 785 F.3d at 1400.

Plaintiff's false marking claim fails on additional grounds because Plaintiff consented to the patent marking on Defendant's wrenches. Plaintiff argues that he seeks damages "confined to the sales [Defendant] wrongfully made under the exclusive distribution agreement." Plaintiff's Opp. at 22. While under the exclusive distribution agreement, however, Plaintiff gave consent for Defendant to mark the Recessed Wrenches in exchange for a payment of $25 per wrench. *Id.*, Ex. B; Wang Decl. ¶ 8 ("In accordance with the instructions provided by Mr. Hebert in the engineering drawing, the file in Exhibit 2, and the authorization letter, I manufactured the Recessed Wrench bearing the ['931 patent number]. No one other [sic] Mr. Hebert ever discussed with me the placement of this patent number on the Recessed Wrench."). Accordingly, the Court concludes that Plaintiff fails to create a triable issue as to whether he suffered competitive injury as a result of the marked Recessed Wrenches and whether the Recessed Wrenches were marked without the consent of the patentee.

**C. Unfair Competition**

The Court finally turns to Plaintiff's claim that Defendant engaged in unfair competition in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("Section 17200"). Plaintiff alleges that Defendant engaged in unfair competition in the following five ways: (1) falsely marking its Recessed Wrenches with Plaintiff's patent number, (2) seeking to invalidate Plaintiff's patent through litigation, (3) making discouraging statements to potential counsel for Plaintiff to deter them from representing Plaintiff, (4) making "bullying statements" to Plaintiff, and (5) "disparaging" Plaintiff to third parties. FAC ¶¶ 58-63; Stewart Decl., Ex. 13. The Court examines each allegation in turn.

Section 17200 prohibits "unfair competition" which is broadly defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each prong of the statute is a separate and distinct theory of liability.[4] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (citing *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999)). The "unlawful" prong "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under Section 17200." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). A "defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law." *Ingels v. Westwood One Broadcasting Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (internal quotations omitted). Conduct under the "fraudulent" prong is conduct that is "likely to deceive." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009). A claim under the fraudulent prong is governed by the "reasonable consumer" standard, which requires the plaintiff to "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Section 17200 requires a party to have suffered an "injury in fact" and "lost money or property as a result of the unfair competition." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

### 1. *False marking*

First, Plaintiff argues that Defendant's false marking constitutes unlawful and deceptive conduct. A claim under the "unlawful" prong hinges upon whether a plaintiff has a viable claim under the predicate law. *Farmers Ins. Exch.*, 2 Cal. 4th at 383; *Martinez v. Welk Group, Inc.*, 907 F. Supp. 2d 1123, 1139 (S.D. Cal. 2012) (granting summary judgment for defendant under Section 17200's unlawful prong where plaintiff has no viable predicate claim). Because Plaintiff fails to raise a triable issue on his false marking claim,

---

[4] Plaintiff does not argue liability or present any evidence under the "unfair" prong, and so the Court focuses its analysis on the "unlawful" and "fraudulent" prongs.

as described above, the Court grants summary judgment in favor of Defendant on Plaintiff's unfair competition claim to the extent it relies on the alleged false marking as the predicate act.

Plaintiff has also failed to submit any evidence to support this claim under the "fraudulent" prong, and so the Court grants summary judgment on the "fraudulent" prong based on Plaintiff's failure to point to triable facts in the record. *Celotex*, 477 U.S. at 314.

### 2.  *Litigation conduct seeking to invalidate the patent*

Second, Plaintiff argues that Defendant's actions in this litigation to challenge the validity of the '931 patent constitute unlawful and deceptive conduct. It is well-established that free competition favors challenging the validity of patents. *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969) (challenging patent validity supports public interest in full and free competition). Moreover, the Noerr-Pennington doctrine protects those who petition the courts—including in the form of filing a counterclaim or other pleadings—from liability for statutory violations. *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005); *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000). Here, the alleged conduct is Defendant's counterclaim for a declaratory judgment of invalidity. This conduct challenging the validity of the '931 patent falls squarely within the scope of a petition to the court that is protected by the Noerr-Pennington doctrine. Therefore, the Court grants summary judgment in favor of Defendant on Plaintiff's unfair competition claim to the extent it relies on Defendant's actions to challenge the validity of the '931 patent.

### 3.  *Statements to potential counsel for Plaintiff*

Third, Plaintiff argues that Defendant's statements "discourag[ing] counsel and potential counsel for [Plaintiff] from representing [Plaintiff]" in the litigation constitute unfair and deceptive conduct. FAC ¶ 63. Plaintiff points to several communications in which Mr. Stoddard communicates settlement offers and Defendant's position on Plaintiff's patent. Dkt. 47-4 at 2–3; Dkt. 47-5. However, Plaintiff does not point to any communications that contain the "discouragement" that he alleges. Therefore, even if such

allegations about discouragement could state a claim for relief under Section 17200, the Court finds that Plaintiff has not raise a triable issue of fact that such discouragement has occurred. The Court grants summary judgment in favor of Defendant on Plaintiff's unfair competition claim to the extent it relies on Defendant's statements "discouraging" counsel.

### 4. *"Bullying" statements to Plaintiff*

Fourth, Plaintiff argues that Defendant's "bullying" statements to Plaintiff constitute unlawful and deceptive conduct. Plaintiff's amended complaint alleged "bullying" statements from Mr. Stoddard to Plaintiff that he "no longer owned the patent" and that he would "blow holes in [his] patent." FAC ¶ 63. However, Plaintiff does not point to any of these purported "bullying" statements in the record. Plaintiff cannot merely rely on his pleadings and thus fails to meet his burden of pointing to triable facts in the record. Fed. R. Civ. P. 56(c)(1)(A). Therefore, the Court grants summary judgment in favor of Defendant on Plaintiff's unfair competition claim to the extent it relies on Defendant's alleged bullying statements to Plaintiff.

### 5. *"Disparaging" statements about Plaintiff to third parties*

Finally, Plaintiff argues that Defendant's "disparaging" statements made to third parties constitute unlawful and deceptive conduct. Plaintiff has not pointed to any evidence in the record regarding disparaging statements made to third parties by Defendant. Because Plaintiff fails to meet his burden of pointing to specific facts to raise a triable issue, *Celotex*, 477 U.S. at 314, the Court grants summary judgment in favor of Defendant on Plaintiff's unfair competition claim to the extent it relies on these allegedly disparaging statements.

Therefore, the Court finds that Plaintiff has failed to raise triable issues of material fact on each of the grounds for the unfair competition claim.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's motion for partial summary judgment of infringement [Dkt. 44] is DENIED. Defendant's cross-motion for summary judgment of non-infringement and summary judgment on false marking and unfair competition [Dkt. 45] is GRANTED.

Pursuant to Federal Rule of Civil Procedure 58, the Court enters judgment in favor of Defendant and ORDERS the Clerk to close the case.

**IT IS SO ORDERED AND ADJUDGED.**

Dated: 9/30/22

Honorable Jinsook Ohta
United States District Judge